# Ashley Lane II v. Department of Employment Security

[347 A.2d 454]

No. 23-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed October 7, 1975

*William R. Brooks,* Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*Raymond S. Fitzpatrick,* Montpelier, for Defendant.

**Larrow, J.** This is claimant's third appeal from findings and conclusions below, adverse to him in each instance, holding him disqualified for unemployment compensation benefits because he left his last employing unit voluntarily without good cause attributable to the employer, as provided by 21 V.S.A. § 1344(a). The Claims Examiner, the Chief Appeals Referee,

and the Employment Security Board all reached substantially the same conclusions. So do we.

Appellant had been employed for about nine months as a repair technician at Simmonds Precision, Inc., in Vergennes. There was some evidence that the employment relationship was at times unhappy, with occasional criticism of his performance and dissatisfaction on his part occasioned by failure to receive an increase granted fellow employees. At that time, about three months before his eventual termination, he prepared but did not submit a typed resignation which he had kept in his toolbox. The Board found, and the evidence supports, a personality conflict with his supervisor. On August 15, 1974, appellant was absent from work because of illness, untreated by a doctor. Although he knew he was required to call in, he did not do so, and when asked the next day by his supervisor where he had been, replied, "I was not here." The supervisor arranged a meeting with his superior, and after discussion advised the appellant that because of his attitude he felt he should resign, otherwise he would have to take further action. Appellant left the meeting and brought back, with dates filled in, the previous resignation form from his toolbox.

Appellant argues, in general, that we should give a liberal construction to the statutes here involved because of their remedial and beneficial purpose. We have indeed so held. *In re Moore,* 128 Vt. 581, 586, 269 A.2d 853 (1963); *Schneider* v. *Vermont Employment Security Board,* 133 Vt. 187, 189, 333 A.2d 104 (1975). But it does not follow that every claim for compensation must be allowed where the general policy of the statute, however broad, does not encompass it. This general policy, as expressed in the then terms of the applicable statute, bars appellant's claim for the weeks here in question when he "is unemployed because (A) He has left his last employing unit voluntarily without good cause attributable to such employing unit." 21 V.S.A. § 1344(a). This expresses the general principle that unemployment compensation is not a benefit available to him at his election, but rather one to which he gains entitlement by circumstances less within his control. Following subsections of § 1344 reinforce this pattern, imposing disqualification for gross misconduct discharge and failure to apply for or accept suitable work. The

complex pattern of the whole statute is one of compensation for involuntary unemployment, with disqualification and penalties where the unemployment is due to choice or fault.

We agree with appellant's contention that his record with respect to tardiness and absenteeism, while not commendable, was within the limits of tolerance established by the company. We do not agree that this record is thereby inadmissible or irrelevant, since it has a definite probative value with respect to determining the ultimate question here involved. That ultimate question is whether his resignation was voluntary without good cause attributable to the employer. It is to be viewed in this light rather than as gross misconduct, which was not claimed by the employer in connection with the record.

So viewed, and taken in connection with the undisputed fact that the resignation he tendered had been reposing in his toolbox for some three months, we are convinced as was the Board that his insolent answer to a legitimate inquiry was merely the culminating circumstance of building dissatisfaction with his employment. Appellant urges that he was given no alternative to resignation, but the Board chose to adopt the line of testimony contradictory to that assertion. Credible evidence supports its finding, which must stand. *Diamond National Corp.* v. *Szerbik*, 129 Vt. 452, 456, 282 A.2d 806 (1971). He was threatened with further procedures, and might indeed have been discharged eventually. This could well have been a factor in his decision to resign, but on the evidence and the findings it was certainly not the only factor. In common parlance, he was given the alternatives, at least before his insolent reply, of "shaping up or shipping out." The Board justifiably concluded that he voluntarily opted for the latter course. No cause attributable to the employing unit appears, and the disqualification follows by operation of the statute.

We note, however, the dates here involved. Appellant's resignation was tendered August 16, 1974, subsequent to the amendment to 21 V.S.A. § 1344(b) which we treated in *Marsh* v. *Department of Employment Security*, 133 Vt. 425, 340 A.2d 93 (1975). This amendment, as we held in *Marsh*,

removed the indefinite nature of the disqualification during periods of high level unemployment and applied, despite the Department's interpretation, where initial claims preceded that period. It substituted a disqualification of six to twelve consecutive weeks, to be determined by the commissioner according to the circumstances. We must, therefore, modify what would otherwise be an entry of affirmance to permit modification below of the disqualification imposed, under our holding in *Marsh*, should appellant's employment circumstances warrant it.

*The order of the Employment Security Board is affirmed in all respects except the duration of appellant's disqualification for benefits, and the cause is remanded for determination of such duration under 21 V.S.A. § 1344(b).*