# Tamara Healey v. Department of Employment Security

[436 A.2d 753]

No. 212-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed September 1, 1981

Motion for Reargument Denied October 7, 1981

*Elliot M. Burg,* South Royalton Legal Clinic, and *Steven A. Kunzman* and *Kathleen M. McCarthy,* Law Students (On the Brief), South Royalton, for Plaintiff.

*Swainbank, Morrissette, Neylon & Hickey,* St. Johnsbury, for Town of Lyndon.

**Underwood, J.** The claimant resigned her job as a lab technician and plant operator at the wastewater treatment facility of the Town of Lyndon. She claimed that she was justified in quitting, after approximately three years on the job, on the ground that she was being discriminated against on the basis of sex. The Employment Security Board (the Board), pursuant to 21 V.S.A. § 1344(a)(2)(A), denied her subsequent application for unemployment compensation benefits on the ground that she had left her employment voluntarily without good cause attributable to her employer. She appeals from this decision.

Because the claimant is really seeking to have her job classification raised to meet her qualifications, we affirm the decision of the Board and do not reach the sex discrimination issue. The sole issue is whether the claimant left her last employing unit voluntarily without good cause attributable to such employing unit, thereby rendering herself ineligible for unemployment benefits.

While a full-time student at Lyndon State College, the claimant was hired by the Town of Lyndon, at $3.75 an hour, to work as a part-time lab technician and plant operator at its wastewater treatment facility. The part-time position was made possible by a cooperative education program under which the College, at the outset, paid a portion of the claimant's wages. When she was hired, the plant was designed to be operated by 2½ full-time employees. There was a full-time chief operator (the claimant's stepfather), another full-time male operator, and the claimant, in a part-time capacity.

For several years, she continued in a part-time capacity for the Town, and continued to be enrolled as a full-time student at the College. At no time did the Town offer her a full-time position, or otherwise treat her as a full-time employee. As a general rule, she worked 20 to 25 hours a week during the school year, and 40 hours a week during school vacations. She was always paid on an hourly basis, as opposed to the full-time employees, who were salaried.

A rift between the claimant and the Town first arose almost three years after the claimant was hired, and then, only after

she had completed a four-month stint of full-time work as acting chief operator. She requested a raise for this period, and at the same time asked to be given a full-time position. The Town increased her pay to $5.25 an hour for seven of the eighteen weeks during which she had been acting chief operator. It refused her request for a full-time position on budgetary grounds, however, but did offer her continued employment in a part-time capacity, and an increase in her hourly wage from $3.75 to $4.50.

At that time, the claimant was classified as a Grade IV operator, while her male counterpart was classified as a Grade III operator. In fact, during most of her employment with the Town, the claimant was classified one grade higher than her male counterpart. The two male operators, however, had both been hired from the outset as full-time salaried employees.

The claimant contends that because she is better qualified than the other plant operator, and capably performs substantially all the duties that he performs as a full-time employee, the Town discriminated against her on the basis of sex in refusing to grant her request for a full-time position. She concludes therefore that she had good cause, directly attributable to her employer, to quit her job.

■■■ The general policy expressed in 21 V.S.A. § 1344(a) (2)(A) bars an applicant's claim when "[h]e has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit." The claimant is not entitled to unemployment benefits at her election, but only if she is so entitled by statute. A voluntary quit is without good cause if it is conditioned, as here, in a manner not within the options open to the employee. *MacDonald* v. *Department of Employment Security*, 136 Vt. 184, 186, 385 A.2d 1117, 1118 (1978). The claimant, as a part-time lab technician and plant operator, had no right to unilaterally rewrite her employment contract. The Town was not required to furnish her with a full-time position just because she could demonstrate that she had qualifications exceeding those required for her job, or superior to those of a full-time male employee in a similar position. *Id.*

Under the circumstances of this case, it makes no difference whether the claimant's counterpart was a male or female lab

technician and plant operator. Sex discrimination is not an issue here. The Town cannot be required to compensate the claimant for skills that it did not need simply because she had become overqualified for her job.

■ Our review of the record demonstrates that the Board's findings are amply supported by the evidence. The claimant was offered continued part-time employment in the same job classification, with an increase in her hourly wage. She voluntarily quit, without good cause attributable to her employer, and she is therefore subject to the statutory disqualification. 21 V.S.A. § 1344(a) (2) (A). We will not disturb the findings of the Board unless, when considered as a whole, there is no evidence to support its decision. *Kasnowski* v. *Department of Employment Security*, 137 Vt. 380, 381, 406 A.2d 388, 389 (1979).

*Judgment affirmed.*